IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| SOUTHBELT PROPERTIES ) | CASE NO. 10-80254-G3-11 |
| MANAGEMENT, INC., ) | |
| ) | |
| Debtor ) | |
| ) | |

### MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Motion of Wells Fargo Bank, N.A., As Trustee for Relief From Stay Of Act Against Property" (Docket No. 21) and after considering the Response (Docket No. 24) filed by Southbelt Properties Management, Inc., Debtor, the evidence, pleadings, docket sheet and entire file, the following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered granting the motion.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 29, 2010.  Debtor's assets consist of five tracts of developed real property in Galveston County, Texas, one of which consists of a sixteen unit apartment complex known as North Park Apartments, located at 2202-2222 16th Avenue

North, Texas City, Texas (the "Property"). Wells Fargo Bank, N.A. (Movant) is the successor in interest to a promissory note in the principal amount of $396,000 and a Deed of Trust establishing a lien on the Property, executed by Debtor on October 26, 2005. The terms of the note require monthly payments of $2,618.66. Movant's Exhibits No. 32 and 33.

From September 2007 to January 2010, several Notices of Payment Delinquencies and Default Notices were issued by the servicer of the loan.[1]  Movant's Exhibit Nos. 1-16, 18. On January 25, 2010, Movant demanded immediate payment on the full amount owed on the note based upon Debtor's default. Movant's Exhibit No. 21. The Property was posted for foreclosure sale in March 2010 but was passed in light of the Debtor's promises to pay. Movant's Exhibit No. 22. The property was again posted for foreclosure sale in April 2010 but the Debtor filed and obtained an ex parte Temporary Restraining Order from state court preventing the foreclosure from occurring. After the expiration of the Temporary Restraining Order, the property was set for a May 2010 foreclosure date. Prior to the May 2010 foreclosure, Debtor filed the instant bankruptcy case. Movant's Exhibit Nos. 27-29. Testimony of John James.

---

[1] The initial loan servicer was Capmark Finance, Inc. which later became Berkadia Commercial Mortgage LLC and on or about January 15, 2010, the loan was transferred to Crown NorthCorp, Inc. for special servicing. Movant's Exhibit Nos. 17, 19 and 20. Testimony of John James, Asset Manager, Crown NorthCorp, Inc.

In the instant Motion, Movant seeks lifting of the automatic stay in order to foreclose on the Property on the bases that Debtor has no equity in the property and that it is not necessary for an effective reorganization, that no adequate protection of its interest in the property exits and that the instant case was filed in bad faith.  Debtor disputes these allegations and contends that at least three different parties were attempting to collect the debt, that payments made by Debtor were not timely credited to the loan balance (resulting in additional late fees and penalties being incurred), and that an oral forbearance agreement existed between Debtor and Movant.

The court takes judicial notice of Movant's proof of claim.  In its proof of claim, Movant asserts that the amount due on the petition date was not less than $433,492.95.  This amount includes $377,888.12 in principal, $21,018.55 in interest, $26,371.86 in attorney's fees and related expenses, $1,178,37 in late fees and $7,557.76 for a prepayment premium.  Interest and attorney's fees continue to accrue and the per diem is $104.34.

Beverly Butler, a commercial real estate appraiser with Butler Burgher Group, hired by Movant to complete an appraisal report, testified that in her opinion, the "as is" market value of the Property, as of February 18, 2010, is $325,000.  Butler's written report, dated March 24, 2010, is in evidence.  Testimony of Butler; Movant's Exhibit No. 34.

Butler, whose expertise is in valuing multi-family properties, arrived at the "as is" market value utilizing the comparable sales approach and the income capitalization approach. Under the sales comparison approach, sales of recently conveyed properties that are reasonably similar, and for which the price, terms, and conditions of sale are known, are analyzed and adjustments are made based upon the physical attributes. The value is assessed on a square foot basis and on a unit basis. The income capitalization approach estimates the market rental rate, expenses, and vacancies to arrive at a net operating income which is capitalized at a market rate, to achieve the value of the subject property. Testimony of Butler.

The Property is located in Texas City, Texas and is classified as a multifamily residence. It is a sixteen unit apartment complex, built in 1969, and consists of two wood frame buildings with brick and wood veneer, each of which have two stories and contain eight units. Each unit has two bedrooms and one and one-half bathrooms. Despite requests, Butler was not permitted interior access to the Property and a drive by inspection was made. Butler's opinion is based upon the assumption that the improvements are in average condition with no deferred maintenance present. Movant's Exhibit No. 34.

In assessing the property on the basis of the comparable sales approach, Butler opined that the value of the Property per square foot was $21.83 and, as a whole, $310,000.

In arriving at this conclusion, she reviewed and analyzed five comparable sales in the general location of the Property[2] and she made adjustments for the location, age of the property, condition, quality, unit size, and occupancy.  The Property was average in condition, quality and appeal of construction, but was older in age than the comparable properties.  Although the Property had a poor occupancy rate (as five units were unoccupied at the time of the evaluation), Butler's assessment assumed only three vacancies as this was the market equivalent.  Testimony of Butler; Movant's Exhibit No. 34.

Applying the income capitalization approach, Butler arrived at a value of $370,000 for the property.  In reaching this conclusion, she examined financial information generated by the Debtor in addition to using market estimates.  Butler surveyed market rentals in the area, reviewed operating expenses of comparable properties, and examined Debtor's rent rolls and prior operating history.  The expenses also included an 18% loss for vacancies and collection losses.  Butler concluded that the subject Property's annual net operating income was $36,700.  Butler determined that an overall capitalization rate of 10% was reasonable based upon the sales, the income and expense assumptions, and calculations derived from application of the

---

[2] The comparable properties are located in cities in or around the general geographic area of Texas City: two are located in Alvin; one in Webster; one in League City; and one in Texas City.

market derivation method and the Band of Investment Technique. Testimony of Butler; Movant's Exhibit No. 34.

According to Butler's report, the income capitalization approach is given primary weight when the subject property is an income producing entity, but for small properties such as the one in issue, the sales comparison approach is a good indicator and where transparent financial information is not available for analysis, market participants would weigh the sales comparison approach heavily.  As such, Butler concluded that the "as is" market value of the Property as of February 18, 2010 was $325,000.  Testimony of Butler; Movant's Exhibit No. 34.

Rick Wilkenfeld, of the Wilkenfeld Company, was employed by Debtor to render an appraisal of the Property. Wilkenfeld's written report, dated July 30, 2010, is in evidence. Debtor's Exhibit No. 6.  Wilkenfeld concluded that the market value of the Property as of July 1, 2010, was $525,000. Testimony of Wilkenfeld.

As did Butler, Wilkenfeld analyzed the Property based on the comparable sales and the income capitalization approaches. Under the comparable sales approach, Wilkenfeld analyzed four sales that he believes are comparable and located in the competing market area.  The court notes that only one of the four is located in the area of Texas City.[3]  Wilkenfeld's report

---

[3] One of the comparable properties is located in the city of Texas City, two are located in Houston, and one is located in Liberty.

reflects that the sales per square foot range from $28.08 to $35.29 "depending on various aspects such as size, location, access, utilities, age, etc." Wilkenfeld concluded that a value of $33 per square foot, or $515,000 total for the Property, is reasonable in light of the Property being "superior in age and condition to most as well as having slightly larger units than the competing sales." Wilkenfeld testified that he did not make any adjustments to the values based upon the physical attributes of the properties. He explained that his report was limited, in his profession, and considered to be the least comprehensive. He said that the comparable properties were very similar and that this negated the necessity of making any adjustments. Testimony of Wilkenfeld; Debtor's Exhibit No. 6. According to Butler, differences in the comparable properties required identification and necessary adjustments. It is very unusual to not have any adjustments. Testimony of Butler.

In valuing the property on an income capitalization approach, Wilkenfeld testified that he did some local research on the current rental rate in Galveston County for a unit with two bedrooms and one and one-half bathrooms and concluded that the fair rental value could be estimated at $675. At the time of his appraisal, Wilkenfeld testified that there was 100% occupancy and he calculated the gross rental income on that basis. He deducted 10% of the gross rental income to account for vacancy and credit loss. After deducting for expenses (the source of which was not

identified), Wilkenfeld arrived at a figure of $69,940 for Debtor's net operating income. Based upon data collected by Real Estate Research Corporation and CoStar indicating that the average capitalization rates for similar properties ranged from 8% to 13%, Wilkenfeld considered a 12% capitalization rate as reasonable. Wilkenfeld's application of the income capitalization approach resulted in a value of $583,000 for the Property. Wilkenfeld concluded that the market value of the Property as of July 1, 2010, was $525,000.

      The court has considered the appraisal reports and testimony of both Butler and Wilkenfeld. The court finds that Wilkenfeld's appraisal is limited and fails to provide complete bases for Wilkenfeld's conclusions. In connection with the sales comparison approach, most of the comparable properties used by Wilkenfeld are not located in the general geographic area of the subject Property. For example, Liberty, Texas is a city north of Houston; the subject Property is in a city south of Houston. Wilkenfeld did not identify any differences and did not make adjustments based upon the physical attributes of the comparable properties. In connection with the income capitalization approach, the source of information used by Wilkenfeld to reach his conclusions as to the net operating income and the appropriate capitalization rate was not readily apparent or adequately specified, other than the fact that the Property was 100% occupied at the time he examined it. Further, no

information was provided in connection with Wilkenfeld's ultimate conclusion that the market value of the property is $525,000.

The court finds that Butler's report includes the underlying information used to analyze and value the Property and includes an explanation of the reasoning upon which her opinion and conclusions are based.  The court finds Butler's appraisal to be credible.  The court finds that for the purposes of the instant motion, the value of the Property is $325,000.

Debtor's contention that the debt was being collected by more than one party has no merit, although the change in the servicer of the loan may account for any confusion.  The payment history on the loan reflects that the principal amount due, $377,888.12, includes credits for those payments Debtor claims were not timely credited and the resultant late fees were in the amount of $1,178.37.  Movant's Exhibit No. 35.  Deducting the late fees from the amount owed would not result in Debtor's having an equity interest in the Property.

Debtor contends that an oral forbearance agreement existed between Debtor and Movant.  The evidence reflects that on or about February 23, 2010, James and Walters discussed the possibility of negotiating a forbearance agreement upon Debtor's compliance with certain requirements, including submission of an updated financial statement, copies of tax returns, monthly operating statements, current rent roll showing collected rent for all units, and payment of at least half of the outstanding

9

amount owed to cure the default.  A proposed forbearance agreement was forwarded by email to Debtor on March 8, 2010.  Movant's Exhibit Nos. 23-26.  Debtor did not submit any of the required documents.  Debtor claims that the proposed forbearance agreement was different from what was discussed.  Movant terminated further discussions and rescinded any offers to enter into a forbearance agreement by letter dated March 10, 2010.  Movant's Exhibit No. 26.  The court finds that no forbearance agreement was entered into between Movant and Debtor.

<u>Conclusions of Law</u>

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if–
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d).

What constitutes "cause" for the lifting of the stay pursuant to Section 362(d)(1) is not defined in the Bankruptcy

Code. Whether cause exists must be determined on a case by case basis based on an examination of the totality of circumstances. <u>In re Reitnauer</u>, 152 F.3d 341, 343 n. 4 (5th Cir. 1998); <u>In re Mendoza</u>, 111 F.3d 1264 (5th Cir. 1997).

    Section 362(g) of the Bankruptcy Code provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
> > (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> >
> > (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

    "Equity" as used in Section 362(d)(2) means the difference between the value of the subject property and the encumbrances against it. <u>Matter of Sutton</u>, 904 F.2d 327 (5th Cir. 1990).

    In the instant case, the amount of the debt owed to Movant as of the petition date, per its proof of claim, is $433,492.95. This court has found that the value of the Property is $325,000. The court concludes that Debtor lacks equity in the property.

    The question of whether a property is necessary to an effective reorganization depends, in the first instance, on whether the Debtor can show a reasonable prospect for a successful reorganization within a reasonable time. The debtor

11

must do more than manifest unsubstantiated hopes for a successful reorganization.  <u>In re Canal Place L.P.</u>, 921 F.2d 569 (5th Cir. 1991).

In the instant case, no plan has been proposed.  Only one monthly operating report has been filed and it is incomplete.  Docket No. 23.  Joe Walters, Debtor's representative, testified that the only income producing asset of the Debtor was the Property.  There has been no authorization requested or granted for the Debtor to use the cash collateral of Movant.  The court concludes that Debtor has failed to sustain its burden of proof to show a reasonable prospect for a successful reorganization within a reasonable time.  The court concludes that the Property is not necessary to an effective reorganization.  The court concludes that the stay should be lifted pursuant to Section 362(d)(2) of the Bankruptcy Code.

In the instant case, Debtors have made no affirmative offer of adequate protection.  The court concludes that the stay should be lifted, for cause, pursuant to Section 362(d)(1) of the Bankruptcy Code.  The court need not address whether the allegations that the instant case was filed in bad faith also constitute cause for lifting the automatic stay.

Based on the foregoing, a separate Judgment will be entered granting the "Motion of Wells Fargo Bank, N.A., As

Trustee for Relief From Stay Of Act Against Property" (Docket No. 21).

Signed at Houston, Texas on August 18, 2010.

*[signature: Letitia Z. Paul]*

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE