

ENTERED
11/19/2010

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|   |   |
|---|---|
| IN RE | ) |
| SOUTHBELT PROPERTIES MANAGEMENT, INC. | ) CASE NO. 10-80254-G3-11 |
| Debtor, | ) |

### MEMORANDUM OPINION

The court has held a hearing on the "Motion of NP Apts. Holding Company, LLC, Assignee of Wells Fargo Bank, N.A., Trustee, to Convert Case to Chapter 7" (Docket No. 62). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Southbest Properties Management, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 29, 2010.

Debtor's schedule A indicates that Debtor owned interests in five parcels of real property on the petition date.

(Docket No. 16).

As to one of the properties, a sixteen-unit apartment complex located in Texas City, Texas which was Debtor's sole income-producing property on the petition date, Wells Fargo Bank, N.A. ("Wells Fargo") moved for relief from the automatic stay on June 23, 2010.  (Docket No. 21).  By Memorandum Opinion and Judgment entered on August 18, 2010, the court lifted the automatic stay to permit Wells Fargo to exercise its rights under applicable law with respect to the property.  The court also noted that Debtor had not sought consent or court authority to use Wells Fargo's cash collateral.  (Docket Nos. 33, 34).[1]

On August 20, 2010, Wells Fargo moved to prohibit Debtor's use of its cash collateral.  The court conducted a hearing on Wells Fargo's motion on August 30, 2010.[2]  At the conclusion of the August 30, 2010 hearing, the court entered an agreed order authorizing Debtor to use Wells Fargo's cash collateral.  That agreed order provides in pertinent part:

> 4. Debtor shall provide the Bank with (i) monthly reports of Debtor's operations no later than the 20th day of the following month, which monthly report shall

---

[1] Debtor's interest in the property was apparently foreclosed on October 5, 2010.

[2] Judge Marvin Isgur conducted the hearing on Wells Fargo's motion to prohibit use of cash collateral, and signed the order entered on the date of the August 30, 2010 hearing authorizing Debtor's use of cash collateral.

>contain the same information presented in the same format required by the U.S. Trustee for the Southern District of Texas, (ii) copies of all existing lease agreements (and any new lease agreements the Debtor enters into within 3 days of the execution of same), and (iii) any other financial information reasonably requested by the Bank to be provided within 3 days of receipt of Debtor or its counsel of a written request for same. Items (i) - (ii) herein shall be certified as true and correct by an officer of the Debtor.
>
>\* \* \*
>
>16. No later then August 31, 2010, the Debtor shall deliver to the Bank's counsel a detailed accounting of all Cash Collateral received by the Debtor since the Petition Date, or that was otherwise in the Debtor's possession on the Petition Date.
>
>17. Not later than October 14, 2010, the Debtor shall deliver to the Bank's counsel an amount of cash collateral equal to all of the Debtor's post-petition gross income less the following approved expense amounts: $6,108.79 (June), $6,801.00 (July), $4,321.00 (August), and $3,850.00 (September).
>
>Notwithstanding anything in this order to the contrary, the Debtor must operate the property in accordance with the health and safety requirements imposed by applicable non-bankruptcy law.  If the approved budget is inadequate to allow for such safe operation, the Debtor must either (i) obtain the Bank's written consent to such additional expenditures; or (ii) seek, by emergency motion, the Court's authority to expend such funds as are required to maintain the property in compliance with applicable health and safety requirements.

(Docket No. 43).

At the August 30, 2010 hearing, Debtor was represented by its attorney of record, Gerson Bloom.  Joe Walters, who signed the petition as the owner of the Debtor, testified at the hearing.

Notwithstanding the court having ordered that Debtor provide monthly reports of its operations to Wells Fargo by the 20th day of the following month, Debtor filed its monthly operating reports for June and July, 2010 on September 20, 2010 (Docket No. 54), and for August and September, 2010 on November 3, 2010 (Docket No. 66).

Notwithstanding the court having ordered, on August 30, 2010, that Debtor provide to Wells Fargo copies of its existing lease agreements, John James, the representative of Movant's special servicer,[3] testified that Movant received copies of the leases during the first week of November, 2010.

Notwithstanding that the court ordered Debtor to provide a detailed accounting of all cash collateral that was in Debtor's possession on the petition date, and received by Debtor since the petition date, James testified that Movant has never received such an accounting.  He testified that Movant received a statement regarding expenditures during September, 2010.  The statement, dated September 30, 2010, is in evidence.  (Movant's Exhibit 8).

---

[3]James testified that he is employed by Crown North Corp., the special servicer for Wells Fargo.  He testified that the movant on the instant motion, NP Apts Holding Company, LLC, is a single purpose entity formed by Wells Fargo to acquire Debtor's interest in the property at foreclosure.  In the instant opinion, the court includes these entities under the description "Wells Fargo."

Notwithstanding that the court ordered that Debtor turn over to Wells Fargo all cash collateral other than $6,108.79 for June, 2010, $6,801.00 for July, 2010, $4,321.00 for August, 2010, and $3,850.00 for September, 2010, James testified that no funds have been turned over to Wells Fargo.

Notwithstanding that the court ordered that, if the budget attached to the cash collateral order was insufficient to allow the safe operation of the property, Debtor must either obtain Wells Fargo's consent to use further cash collateral, or file an emergency motion seeking such relief, the cash collateral report indicates that Debtor spent $8,980 on an emergency sewer repair, and $12,860 on "Emergency City of TC Compliance" without bank consent and without filing a motion.  James testified that Debtor never requested that Wells Fargo allow it to make the expenditures.  James testified that, if Wells Fargo had been aware of the proposed expenditures, which were far in excess of the monthly expenditures permitted for each month under the cash collateral order, Wells Fargo would not have agreed to entry of the agreed cash collateral order.

Josh Murff, a contractor who has done work for Debtor and for other entities owned by Walters, testified that the $8,980 and $12,860 expenditures reflected amounts paid to him. He testified the September 30, 2010 statement, which included the $8,980 and $12,860 amounts paid to him, was prepared at Walters'

direction, in Walters' office, listing invoice numbers of 5891 and 5936.  Although the statement reflects that invoice number 5891 was dated August 25, 2010, Murff testified that it was created on the same date as the statement.  Although the statement reflects that invoice number 5936 was dated September 1, 2010, Murff testified that it was created on the same date as the statement.

Murff testified that the $8,980 was for his services and those of six helpers, in digging out a backed up sewer line serving the property.  He testified that the $12,860 was for his services in repainting the apartments, and replacing some rotten wood.

Janie Wood, a tenant at the property, testified that in May, 2009, she received a direction from Walters to pay her rent to Aircomm Communications.  She testified that she did so. Wood's testimony was credible.  Wood's rent check for October, 2010, made out to Aircomm Communications, is in evidence. (Movant's Exhibit 10).[4]

Walters testified that Debtor has operated its business in Chapter 11 based on instructions given to him at the August 30, 2010 hearing.  He testified that, although he knew that

---

[4]The court notes that Aircomm Communications, Inc., an entity owned and operated by Walters, is a Chapter 11 debtor in Case No. 10-80444-G3-11.  Another entity owned and operated by Walters, SBPM Holdings, Inc., is a Chapter 11 debtor in Case No. 10-80310-G3-11.

6

Debtor was required either to file a motion or obtain consent of the bank for Debtor to use cash collateral, he believed Debtor was authorized to use cash collateral to make the $8,980 and $12,860 expenditures. Walters' testimony that he believed he had authority to spend the funds is not credible.[5]

Walters testified that Debtor has not set up an account to segregate cash collateral of Wells Fargo.

Walters testified that $12,825 has been paid to multiple attorneys postpetition. He testified that he is not exactly sure which attorneys have been paid.[6] He testified that Debtor has used cash collateral of Wells Fargo to pay those attorneys, and that he did not seek consent from Wells Fargo or

---

[5]The court notes that there was a written order addressing which uses Debtor could make of cash collateral. Debtor is represented by an attorney. It is virtually certain that either Debtor's counsel properly advised Walters that Debtor could not use cash collateral without seeking bank consent or filing a motion, and that advice was ignored, Debtor's counsel failed to advise Walters, or that Debtor's counsel advised Walters that, notwithstanding the court's order, Debtor could use cash collateral without seeking bank consent or filing a motion. In the latter two instances, it appears that there was a significant failure by Debtor's counsel to make his client representative sufficiently aware of the legal responsibilities of a Chapter 11 debtor. Although there is not clear evidence on which to make a referral to the United States Attorney in the instant case, the court will take into consideration this failure, when the time comes to address the fees of Debtor's counsel.

[6]Walters testified that Paul Lavalle and J. Michael Fieglein represent Debtor in state court litigation. Walters was uncertain whether such litigation was commenced before or after the date of filing of the bankruptcy petition in the instant case.

court approval to pay those attorneys.

## Conclusions of Law

Under Section 1112(b) of the Bankruptcy Code, on request of a party in interest, and with exceptions not present in the instant case, the court shall convert a Chapter 11 case to Chapter 7 or dismiss the case, whichever is in the best interest of creditors and the estate, if the movant establishes cause. 11 U.S.C. § 1112(b)(1).

Section 1112(b)(4) of the Bankruptcy Code provides in pertinent part that cause includes:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
>
> * * *
>
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

11 U.S.C. § 1112(b)(4).

In the instant case, there is cause for conversion to Chapter 7. The Debtor's primary income-producing asset has been foreclosed. Debtor has used cash collateral without court authority, and failed to comply with the requirements of the cash collateral order. Debtor has failed to timely file operating

reports. Debtor has apparently diverted rent payments to another entity controlled by Debtor's owner. Walters has failed to keep adequate records, and has attempted to retroactively construct records to retroactively justify use of Wells Fargo's cash collateral. The court concludes that the instant case should be converted to a case under Chapter 7 of the Bankruptcy Code.

Based on the foregoing, a separate Judgment will be entered granting the "Motion of NP Apts. Holding Company, LLC, Assignee of Wells Fargo Bank, N.A., Trustee, to Convert Case to Chapter 7" (Docket No. 62).

Signed at Houston, Texas on November 19, 2010.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE