IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

ENTERED
01/28/2011

|   |   |
|---|---|
| IN RE ) | |
| ) | |
| SOUTHBELT PROPERTIES ) | CASE NO. 10-80254-G3-7 |
| MANAGEMENT, LLC, ) | |
| ) | |
| Debtor, ) | |
| ) | |

## MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Motion of NP Apts. Holding Company, LLC, Assignee of Wells Fargo Bank, N.A. as Trustee, for Debtor and its Owner/Manager (Joe E. Walters, Jr.) To Show Cause Why They Should Not Be Held in Contempt for Failing to Comply with Cash Collateral Order" (Docket No. 61). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion in part. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Southbelt Properties Management, LLC ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 29, 2010. Joe E. Walters, Jr. signed the petition in the instant case as the owner of the Debtor. The case was converted to Chapter 7, by Judgment entered on November 19, 2010. Joseph

M. Hill is the Chapter 7 Trustee.

Debtor owned single asset real estate on the petition date, consisting of, inter alia, a sixteen-unit apartment complex located in Texas City, Texas.  Wells Fargo Bank, N.A. ("Wells Fargo") asserted a security interest in the real property, and in the rents obtained therefrom as cash collateral.[1]  Wells Fargo obtained relief from stay, by Judgment entered August 18, 2010. (Docket No. 34).  The property was sold, at a foreclosure conducted on October 5, 2010, to NP Apts. Holding Company, LLC ("Movant"), a special purpose vehicle created by Wells Fargo to purchase the property at the foreclosure sale.

From the petition date through August 30, 2010, Debtor operated without either consent of Wells Fargo or an order from the court authorizing the use of cash collateral.  On August 20, 2010, Wells Fargo filed a motion to prohibit Debtor's use of cash collateral.  (Docket No. 35).

On August 30, 2010, the court held an evidentiary hearing on the motion to prohibit use of cash collateral.[2]  Joe E. Walters, Jr. testified at the August 30, 2010 hearing.  At the hearing, the court announced findings of fact and conclusions of law.  The court stated:

---

[1] Wells Fargo has apparently assigned its interest in the rents to Movant.

[2] The August 30, 2010 hearing was conducted by the Honorable Marvin Isgur.

> I'm going to add a paragraph to the Order that authorizes the Debtor to expend additional sums for health, safety and maintenance issues on emergency application to the Court with notice to the bank, but I don't want this Order to in any way get in the way with your need to provide a safe and habitable place for the residents in accordance with local law. So you're telling me you don't have your hands around that yet. As soon as you get your hands around that, you'll need to file an emergency motion, but we're going to authorize you to maintain the property in accordance with the law.

(Tr. 8/30/2010, at p. 7-8).

On August 30, 2010, the agreed order was entered addressing Debtor's use of Wells Fargo's cash collateral. The agreed order contained provisions submitted by the parties (including a provision requiring Debtor to deliver to Wells Fargo's counsel no later than October 14, 2010 "all of the Debtor's post-petition gross income less the following approved expense amounts: $6,108.79 (June). $6,801.00 (July), $4,321.00 (August), and $3,850.00 (September)." The order also contains one additional provision added by the court. That unnumbered paragraph provides:

> Notwithstanding anything in this order to the contrary, the Debtor must operate the property in accordance with the health and safety requirements imposed by applicable non-bankruptcy law. If the approved budget is inadequate to allow for such safe operation, the Debtor must either (i) obtain the Bank's written consent to such additional expenditures; or (ii) seek, by emergency motion, the Court's authority to expend such funds as are required to maintain the property in compliance with applicable health and safety requirements.

(Docket No. 43).

Debtor did not file any further motion seeking authority to use cash collateral in excess of that authorized by the August 30, 2010 order.

John James, an employee of Crown Northcorp, Inc., the special servicer for Wells Fargo, testified that Movant has not received any of its cash collateral from Debtor.

Nick Slaughter, an employee of Devonshire Real Estate Asset Management ("Devonshire"), the entity hired by Movant to manage the property after Movant foreclosed on October 5, 2010, testified that Debtor collected $7,427.98 in rents for October, 2010, prior to the foreclosure. None of these funds were turned over to either Movant or to Devonshire.

Debtor's monthly operating report for September, 2010, indicates that Debtor had income of $25,129.82 in September, 2010. Notwithstanding that the cash collateral order authorized Debtor to use only $3,850.00 of Wells Fargo's cash collateral for September, 2010, Debtor reported expenditures totaling $42,486.24. (Movant's Exhibit 5).

Chastity Rutherford testified that she is an employee of Aircomm Communications, Inc. ("Aircomm"), and that Aircomm is the manager of Debtor.[3] She testified that Walters hired a crew to perform work required to comply with the fire code of the City

---

[3] The court notes that Aircomm is the debtor in Case No. 10-80444-G3-11.

4

of Texas City, Texas.

Rutherford testified that approximately $12,000 was spent to dig a tunnel to address a backup of sewage into the bathtub of one of the apartments.

In the instant motion, Movant seeks a finding of contempt against Debtor and Walters, a fine of $1,500 against both Debtor and Walters, and imposition of daily sanctions against both Debtor and Walters in the amount of $500 per day until all amounts due are paid.

Movant properly served the instant motion and the notice of hearing on both Debtor and Walters.  Debtor's counsel appeared at the hearing on the instant motion.  Walters did not appear.[4]

## Conclusions of Law

Civil contempt can serve two purposes, either coercing compliance with an order or compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct. In re Bradley, 588 F.3d 254 (5th Cir. 2009).

In a civil contempt proceeding, the movant must show that a court order was in effect, that the order required certain conduct by the respondent, and that the respondent failed to

---

[4] Rutherford testified that she personally handed a copy of the motion to Walters.  Additionally, Movant had Walters personally served.  The process server filed an affidavit stating that he personally handed to Walters the notice of hearing. (Docket No. 110).

comply with the court's order.  F.D.I.C. v. LeGrand, 43 F.3d 163 (5th Cir. 1995).

In determining a civil contempt sanction, the court considers: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order. Lamar Financial Corp. v. Adams, 918 F.2d 564 (5th Cir. 1990).

In the instant case, Joe E. Walters, Jr. knew, both in his individual capacity and as the person in charge for the Debtor, that the court had required that Debtor obtain either consent from Wells Fargo or a further court order before spending Wells Fargo's cash collateral.  Debtor and Walters both willfully failed to comply, and instead spent the cash collateral without Wells Fargo's consent or this court's order.  The court concludes that both Debtor and Walters are in contempt of this court's order of August 30, 2010.

As to Debtor, the case has been converted to Chapter 7, and the creditors of Debtor would bear the burden of any sanction.  This court determines that, because a sanction against Debtor would be ineffective, no sanction will be assessed against Debtor.

As to a sanction for Walters' contempt, the court determines that Walters is personally liable to Movant for the

cash collateral spent. The amount for which Walters is liable consists of the $42,486.24 Debtor spent during September, 2010, less the $3,850 Debtor was authorized to spend during September, 2010, plus the $7,427.98 collected by Debtor in October, 2010 and not remitted to Movant, for a total of $46,064.22. However, there is no evidence that an additional sanction would coerce his compliance with the obligation to turn over that cash collateral to Movant.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on January 28, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE